UNITED STATES v. LOW. See Case No. 15,634.

## Case No. 15,634.

### UNITED STATES v. LOW et al.

[13 Int. Rev. Rec. 124; 10 Am. Law Reg. (N. S.) 455.]

Circuit Court, S. D. Georgia. April 14, 1871.

PAYMENT OF CUSTOMS DUTIES — ACTION ON BOND —DEFENSES—PAYMENT TO CONFEDERATE AUTHORITIES.

[1. In an action on a bond given for the payment of duties on goods deposited in the public stores in Savannah, it is no defense that the principal actually paid, under compulsion, the amount of the duties to the Confederate collector of customs during the occupancy of Savannah by the Confederate authorities.]

[2. Nor is it a defense that there was no United States collector of customs or other agent at Savannah, to whom payment could be made, during the three years within which the duties were to be paid under the provisions of the bond.]

J. D. Pope, U. S. Dist. Atty.

Law, Lovell & Falligant, for defendants.

WOODS, Circuit Judge (charging jury). This is· an action of debt brought by the United States against the defendants [Andrew Low and Charles Green] upon their joint and several bond under seal, dated the 1st day of December, 1860, whereby they bind themselves to pay to the United States the sum of $2,700. The bond is subject to the condition that "if the obligors, or either of them, shall, on or before the expiration of three years, to be computed from the date of the importation of the goods, wares, and merchandise therein mentioned, well and truly pay, or cause to be paid, unto the collector of customs for the time being, the sum of $1,360.54, or the amount of duties to be ascertained as due and owing on goods, wares, and merchandise imported by A. Low & Co., in the British ship Shandon, Munro, master, from

Liverpool, consisting of four hundred and twenty-five tons of pig iron, or shall. in the mode prescribed by law, on or before the expiration of the three years aforesaid, withdraw the said goods from the public stores where they may be deposited at the port of Savannah, then this obligation is to be void, otherwise to remain in full force and virtue."

The bond is produced in evidence, and its execution is not disputed. The only other evidence in the case is the testimony of the witness Z. H. Winkler, which is in substance as follows: "The words written across, the face of the bond, namely: 'Cancelled by withdrawal and payment of duties, this 30th day of August, 1861, Z. H. Winkler, ·Clerk,' were written by me the day they bear date. I was at that time bond and debenture clerk under John Boston, who was Confederate collector of customs at Savannah. It was in the capacity of his clerk that I made the endorsement upon the bond. On the back of the bond are the words and figures: '$1,300 paid August 30, 1861,' which was also written by me on the day they bear date. On the 30th day of August, 1861, there were no United States customs officers in Savannah. At that time the United States had not the custody of the articles mentioned in the bond. At the time the goods were delivered to defendants they were in the possession of the Confederate States. If the duties had not been paid by them they would have been. sold by the Confederate States. The United States did not resume their authority over the custom house and port of Savannah till about the 22d day of December, 1864." This comprises all the testimony in the case, and there is no dispute between the parties, or any question of fact. If we have misstated any fact or omitted any fact, it is your province, gentlemen. to correct us.

On this state of facts the defendants claim that the plaintiff ought not to recover—First, because the payment of the duties on the goods mentioned in bond, to the Confederate collector of customs was, in effect, a payment to the United States, and the bond was discharged thereby; second, that the United States undertook, by necessary implication from the terms of the bond, that there should be a collector of customs or other agent of the United States at Savannah, during the three years specified in the bond, to receive the duties or to ascertain the amount to be due, and to deliver the goods to the defendants on the payment of the duties, and having failed in this, and having abandoned the goods, and the same having fallen into the hands ·of what is known as the Confederate States, to which the defendants were obliged to pay duties to prevent their property from being sold, the United States cannot recover in this action. It is not claimed that the duties were ever paid directly to the United States, nor that the money ever came to the treasury of the United States, or to the hand of any officer authorized to receive it for the United States. Neither is it claimed that the property was lost to the defendants. On the contrary, it is not denied that defendants received their property when they demanded it. Nor is it claimed that the payment of these duties was compelled by superior force or irresistible power, but only by a refusal to deliver the property unless payment of the duties to the Confederate collector of customs was made.

On the first ground of defense raised, we instruct you that payment to an agent or officer of the Confederate States of the duties mentioned in the bond was no payment to the United States nor substitute therefor, nor does it constitute any excuse for nonpayment to the United States. On the importation of the goods the duties became due and payable to the United States; the defendants became the debtors of the United States; and their obligation to pay was evidenced and secured by the bond in suit. This debt could only be discharged by payment to the United States. It is no answer to say that if the duties had not been paid to the Confederate officer the goods would have been sold. The Confederate officer who held these goods and exacted this payment was, to state his character in the mildest form, a naked trespasser, without authority or color of authority. The whole Confederate power under which this officer acted was a usurpation of unlawful authority; its acts can have no force as law in divesting or transferring rights or as authority for any act opposed to the just authority of the federal government. So that the case stands in the same plight as if John Boston had on his own motion and with the strong hand taken possession of these goods, and exacted a ransom for their delivery to their owners. It can scarcely be claimed that a payment to him under the circumstances would discharge a debt due to the United States. Had Boston sold the goods on refusal of defendants to pay the duties to him, the defendants might have had their action against him or the purchaser for unlawful conversion; but such unlawful conversion would not divest the United States of its right to the duties upon the goods.

On the second branch of the defence we say to you that by the terms of the bond the United States entered into no obligation with defendants, the failure to perform which would release defendants from their liabilities on the bond. The United States were not bound, as a condition precedent to a recovery on this bond. at all times to have a collector of customs at Savannah to whom payment of duties could be made. The absence of a collector of customs for a space of time no more defeated the bond than the failure and closing of a bank at which a promissory note is made payable discharges the note. The only obligations created by this bond are obligations assum-

ed by the makers. They owe duties to the United States. They have the option either to pay them at once or twice, to give bond for their payment, and place their goods in a bonded warehouse at their own risk and expense. If the goods are burned, it is their loss. If they are stolen it is their own loss. If they are captured by the superior force of insurgents against the United States, it is their loss. The United States are not insurers, nor even bailees. Nothing short of a voluntary abandonment of the goods by the United States, or their wrongful conversion by the United States, could release the defendants from their obligation to pay duties. The goods were not wrongfully converted, nor is there any evidence that they were voluntarily abandoned; on the contrary, the court judicially knows the historical fact that the custom house and bonded warehouses of the United States at Savannah were taken from the possession of the United States by the superior and irresistible force of an armed rebellion, against which the United States never agreed to become insurers. The obligation to pay these duties secured by the bond is absolute, and nothing but their payment can discharge the bond, unless the conversion of the goods or their voluntary abandonment by the United States might be an excuse, neither of which is claimed or proved. The execution of the bond is not denied. We instruct you that if you believe all the testimony on which defendants rely, still it constitutes no defense to this action, and that it is your duty to return a verdict for the plaintiff for the amount of the duties in gold, namely, $1.360.54, with interest from the 22d day of December, 1864, the date when the United States received possession of the port and custom house at Savannah.

[The jury rendered the following verdict: "We, the jury, under the charge of the court, find a verdict in favor of the plaintiffs for $1,360.54, with interest, in currency, from the 22d day of December, 1864."] 1